**IT IS ORDERED as set forth below:**



**Date: January 24, 2018**

_____

**Mary Grace Diehl
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| In re: | CASE NUMBER |
| **JOHNNY RUSSELL HUETHER**, | **17-41142-MGD** |
| Debtor. | CHAPTER 13 |

### ORDER DENYING CONFIRMATION WITHOUT PREJUDICE

This matter came before the Court for an evidentiary hearing on January 16, 2018 (the "Hearing") on the issue of good faith in regards to confirmation of Johnny Russell Huether ("Debtor")'s *Amended Chapter 13 Plan*, filed on May 11, 2017 (the "Plan"). (Docket No. 6). Also scheduled for an evidentiary hearing was the *Motion of Creditors Sondra Huether and Shirley Mallory for Allowance of Administrative Expense Claims Pursuant to 11 U.S.C. §§ 503(b), 105 and 363*, filed on November 8, 2017 (the "Motion"), and on Debtor's *Objection to Sondra Huether Frost Proof of Claim 6-1*, filed on January 9, 2018 (the "Objection"). (Docket Nos. 28 &

1

31). Because the Court denies confirmation based on the current Plan, the Court did not reach the Motion or the Objection at the Hearing.

At the Hearing, Debtor and his counsel appeared in support of confirmation, creditor Sondra Huether ("Ms. Huether") and her counsel appeared in opposition to confirmation. Debtor offered the testimony of three witnesses: Debtor, Jason Free, a real estate broker, and Kevin Aires, the original listing agent of Debtor's former residence. Ms. Huether offered her own testimony. The following documents were admitted into evidence: Debtor's Exhibits D & N; Ms. Huether's Exhibits 1-8. Counsel for the chapter 13 trustee also appeared in opposition to confirmation, but did not offer or examine any evidence.

After review of the Plan and related pleadings, the Docket in this case, the arguments made at the Hearing, and the reasons stated on the record, which are incorporated herein under Federal Rule of Bankruptcy Procedure 7052, adopting Federal Rule of Civil Procedure 52, as applicable herein through Federal Rule of Bankruptcy Procedure 9014(c), and summarized below, the Court finds that Debtor's Plan was not filed in good faith and denies confirmation without prejudice, and gives leave to Debtor to either file a new plan or convert this case within ten days to a chapter 7 case. If no action is taken, the case may be dismissed without further notice and opportunity for a hearing.

In the current Plan, Debtor proposes to pay $125 per month, with an applicable commitment period of 36 months. From those payments, Debtor proposes to pay $5,500 in attorneys' fees and $1,200 on account of a domestic support obligation priority unsecured claim to Ms. Huether. Debtor proposes to surrender his interest in four parcels of jointly-owned real property and one automobile. One of the parcels of real property is Debtor's former residence,

located at 626 Park Ave SE, Lindale, Georgia 30147 (the "Residence"). Debtor has also scheduled $189,865 in general unsecured claims and proposes a 0% dividend. In a supplementary provision, Debtor provides he shall arrange to sell by auction the four parcels of real property that are listed for surrender in the applicable section of the Plan. Ms. Huether holds secured, priority, and unsecured claims.

In his testimony, Debtor admitted that after he filed for bankruptcy, he undertook to auction the four real properties, but the auctioneer whom Debtor had retained to appraise and sell them informed him that the value of the Residence was far below the approximately $215,000 that Debtor was seeking. Debtor then testified that after informing Ms. Huether of the auctioneer's opinion, the parties agreed that instead of Debtor auctioning off the properties, he would surrender them to Ms. Huether, who could then market and sell them herself. This was memorialized in the Order entitled *Consent Order on Interim Confirmation Hearing Modifying Automatic Stay*, entered on August 30, 2017 (the "Interim Order"). (Docket No. 21). The Interim Order provided that "[t]he automatic stay is hereby modified to give [Ms. Huether and her father] possession and to allow them to exercise all state law *in rem* remedies." *Interim Order* at *3 ¶(a). It further provided that Debtor was required to vacate the properties no later than September 13, 2017, and that Ms. Huether and her father "are authorized to hire a realtor of their choice to market and sell the properties without interference from the Debtor." *Interim Order* at *2-3 ¶¶(a)-(b).

Ms. Huether alleged that when Debtor vacated the properties, he left them in terrible condition and several fixtures had been removed. In vacating the Residence, Debtor admitted in his testimony at the Hearing that he took with him, *inter alia*, a chandelier, a wrought-iron gate from the bottom of a spiral staircase, and a fireplace mantle. He argued that he had left a

replacement ceiling light for the chandelier, and that he had made the wrought-iron gate and therefore was entitled to it. As to the mantle, he argued that construction of the fireplace had never been completed, and that he had purchased the mantle, and so he was also entitled to it as well. He also admitted that he removed several arches attached to columns on the porch outside the Residence, because when a tree fell on the Residence and porch, some of the arches had been damaged beyond repair, and that the arches themselves had been discontinued. Therefore, since some of the arches could not be replaced, he removed the remaining, undamaged ones for the sake of uniformity, but left them at the Residence. Finally, he admitted to removing non-structural pillars from the living room, and some appliances from the kitchen, including the refrigerator.

Jason Free was a real estate broker retained by Ms. Huether to market and sell the Residence. He testified that he listed the Residence on October 17, 2017, at $135,000, and showed the Residence on twenty separate occasions to potential buyers. Despite the twenty showings, no offers had been made. He also testified that the Residence had previously been listed for sale by Kevin Aires for $180,000 for more than 400 days. Based on the current, poor condition of the Residence, Mr. Free testified that approximately $15,000 to $25,000 would be needed for repairs and renovations. He testified that the value of one of the other properties, Debtor's iron-working shop, had a value of no more than $30,000 to $40,000, and that the other two properties were in very poor condition, and could only be sold to parties interested in investment properties, because they were not currently in livable condition.

As previously stated, Debtor also offered the testimony of Kevin Aires. Mr. Aires was the original broker who listed the Residence for sale for $180,000 for more than 400 days without any showings or purchase offers. He testified that, when originally listed, the Residence was in better

4

condition than it was currently in, and the only damage at that time was to the Residence's porch from the tree falling on it, but none of the fixtures or appliances listed above had been removed yet. He also testified that Debtor had insisted on 48-hour notice prior to any showings, rather than the more standard 24-hour notice, and that this increased notice requirement made it more difficult to market the property and show it to potential buyers. When questioned by the Court, Mr. Aires testified that he had never actually been to the Residence nor inspected it; that his listing and his opinion were based purely on pictures and information provided to him by others. He also testified that he did not visit the Residence after Debtor vacated it in September, nor did he see any pictures from after Debtor vacated it.

      Chapter 13 has several significant differences from chapter 7. First and foremost, chapter 7 is a liquidation chapter whereby a debtor's assets are liquidated by a chapter 7 trustee and then the funds from any equity in those assets are distributed pro rata to the debtor's creditors based on the priorities of the Bankruptcy Code. By contrast, chapter 13 allows a debtor to pay its creditors over three to five years out of the debtor's future income rather than through liquidation of assets. Although not a necessity, most chapter 13 cases attempt to preserve a debtor's ownership of assets, either real or personal, such as a residence or automobile. In return for being able to maintain ownership of such property, § 1325(a)(4) requires a debtor to pay to its creditors at least a minimum of what such creditor would receive in a chapter 7 liquidation, and to contribute all disposable income to the plan during the applicable commitment period.

      The burden is on a debtor to prove his or her good faith when an objection to confirmation is raised by the trustee or a creditor. Pursuant to 11 U.S.C. §§ 1325(a)(3) and (7), both the plan and the case itself must be filed in good faith. The Bankruptcy Code does not define good faith in

either context, but the Eleventh Circuit has enumerated the following non-exclusive factors that can be relevant in a good faith inquiry:

1. the amount of the debtor's income from all sources;
2. the living expenses of the debtor and his dependents;
3. the amount of attorney's fees;
4. the probable or expected duration of the debtor's Chapter 13 plan;
5. the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
6. the debtor's degree of effort;
7. the debtor's ability to earn and the likelihood of fluctuation in his earnings;
8. special circumstances such as inordinate medical expense;
9. the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
10. the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
11. the burden which the plan's administration would place on the trustee;
12. the extent to which claims are modified and the extent of preferential treatment among classes of creditors;
13. substantiality of the repayment to the unsecured creditors;
14. the nature of the debts to be discharged and whether such would be dischargeable under chapter 7;
15. the accuracy of the debtor's schedules, pleadings, and other statements; and
16. any other factors or exceptional circumstances.

*In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983).   The court did not emphasize that any one factor or factors would necessarily be more relevant that any others, and that each analysis must be done on a case-by-case basis on the totality of circumstances in each case.   Relevant to this case are factors 3, 5, 13, and 14 above.   The attorneys' fee of $5,500 is more than 33% greater than the common fee in this district.   Debtor testified, and his attorney argued, that Debtor's motivation in seeking relief under chapter 13 is to discharge debts that are not dischargeable in a chapter 7 case, so that Debtor can avoid a threat of incarceration that he alleges Ms. Huether has made.   The current Plan proposes a 0% dividend to his unsecured creditors.   Finally, as stated above, Debtor

is attempting to discharge debts that would not be dischargeable in a chapter 7 case. Based on these facts, all of these factors weigh against a finding of good faith.

Although not exactly analogous to the case at bar, prior cases both within and without the circuit have addressed the issue of attorneys' fee-only or fee-centric cases and are informative on this case. Generally across those cases, fee-only and fee-centric plans have been confirmed when the respective debtor was attempting to achieve some other, legitimate chapter 13 purpose as well. *See, e.g.*, *Sikes v. Crager (In re Crager)*, 691 F.3d 671 (5th Cir. 2012); *In re Dunson*, 550 B.R. 537 (Bankr. D. Kan. 2016); *In re Wark*, 542 B.R. 522 (Bankr. D. Kan. 2015) (collecting cases).

Although this case was not filed as a chapter 13 for the sole purpose of being able to pay attorneys' fees over time, based on the Plan, it will take 44 months to pay just Debtor's attorneys' fees before even paying the nondischargeable domestic support obligation claim of Ms. Huether, the only other claim to receive payment under the Plan. Of the estimated $189,000 in unsecured claims, the vast majority are claims arising out of a divorce settlement between Debtor and Ms. Huether. The parties agree that these debts are not domestic support obligations, but because they arise from or are referenced in a divorce settlement, these debts to Ms. Huether are under § 523(a)(15). Included as Exhibit A to Ms. Huether's proof of claim, the divorce decree between Debtor and Ms. Huether included a requirement that Debtor execute a promissory note and warranty deed in favor of Ms. Huether for $30,000 plus interest for her interest in one of the properties, Debtor's iron-working shop. *See* Proof of Claim No. 6-1, Exhibit A, at *4-5.[1] Ms. Huether's proof of claim also included a claim for $89,675 under § 523(a)(15) on a promissory note issued by Debtor to Ms. Huether's father, which was guaranteed by Ms. Huether, and was

---

[1] With interest, Ms. Huether's proof of claim listed this amount as $31,650.

7

referenced in the divorce decree. The Court makes no determination as to whether Debtor's direct debt to Ms. Huether's father is an obligation under 11 U.S.C. § 523(a)(15).

Any debts that are § 523(a)(15) debts would be excepted from discharge in a chapter 7 case, pursuant to §§ 523(a)(15) and 727(b), but would not be excepted from discharge in a chapter 13 case, pursuant to § 1328(a)(2). In light of this uncertainty, Debtor filed for relief under chapter 13 in case those debts are properly categorized as § 523(a)(15) debts, and therefore would be subject to discharge in a chapter 13 case. The Plan as proposed, however, is essentially a chapter 7 liquidation being accomplished through a chapter 13 plan, because the only non-exempt property owned by Debtor is being surrendered or liquidated, with the remaining deficiencies discharged. As Debtor's attorney argued at the Hearing, the only reason why Debtor filed a chapter 13 case instead of a chapter 7 case was the ability to discharge these § 523(a)(15) debts, because if they are not discharged, Debtor testified that he believed Ms. Huether would seek his incarceration.

Additionally, as stated above, a chapter 13 plan is only confirmable if the creditors receive more than they would in a chapter 7 liquidation. Regardless of the justifications that Debtor offered, the undisputed facts are that on the petition date of May 11, 2017, the Residence had a chandelier, a wrought-iron gate, a fireplace mantle, arches mounted at the top of most of the columns on the porch, and non-structural columns were present in the living room. Without addressing the allegations of large amounts of garbage and other damage that Ms. Huether asserts Debtor caused in vacating the properties, at a minimum, the removal of the fixtures described above caused a decrease in value of the Residence during the pendency of this case. Therefore, Debtor's creditors are not better off with the current chapter 13 case than they would have been had Debtor filed a chapter 7 case on May 11, 2017. Additionally, seeking dischargeability of

§ 523(a)(15) debts through a chapter 13 case that would not be dischargeable in a chapter 7 case, with a plan that only achieves the same result as a chapter 7 liquidation, does not support a finding of good faith.

The Court does not find that Debtor has met his burden of proving that the current Plan is proposed in good faith, because there is no reorganization proposed by this Plan; this Plan is essentially a disguised chapter 7 liquidation, seeking to discharge debts that would not be dischargeable in a conventional chapter 7; and this plan only benefits Debtor in discharging otherwise nondischargeable debts while Debtor's creditors are not receiving better treatment than they would have if Debtor had initially filed this case under chapter 7. Debtor's attorney argued that if the § 523(a)(15) debt is not discharged in this case, Ms. Huether would seek incarceration of Debtor in the Superior Court. The argument is speculative, but, nonetheless, it does not change the fact that the proposed Plan is a disguised chapter 7 liquidation nor that Debtor's creditors are now in a worse position than they would have been had Debtor filed under chapter 7. Additionally, Debtor testified that, as of the Hearing, he is not fully current on his postpetition domestic support obligations, another requirement for confirmation pursuant to § 1325(a)(8).

Accordingly, it is

**ORDERED** that confirmation is **DENIED WITHOUT PREJUDICE**. And it is further

**ORDERED** that within ten days Debtor shall either (1) file an amended chapter 13 plan that would support a finding of good faith in light of this Order, or (2) convert this case to chapter 7. And it is further

**ORDERED** that should Debtor neither file an amended plan nor convert this case to chapter 7 **timely**, then this case may be dismissed without further notice or opportunity for a hearing.

The Clerk is directed to serve a copy of this Order upon the attached distribution list.

**[END OF DOCUMENT]**

DISTRIBUTION LIST

Johnny Russell Huether
626 Park Ave SE
Lindale, GA 30147-1444

W. Jeremy Salter
Salter & Salter, P.C.
P.O. Box 609
Rome, GA 30162

Sondra Huether & Shirley Mallory
c/o Frank Jones, Esq.
P.O. Box 5007
Rome, GA 30162-5007

Sondra Huether
447 Pullen Road
Lindale, GA 30147

Brian R. Cahn
Brian R. Cahn and Associates, LLC
5 S. Public Square
Cartersville, GA 30120

Mary Ida Townson, Esq.
Standing Chapter 13 Trustee
191 Peachtree Street, Suite 2200
Atlanta, GA 30303

Daniel M. McDermott
Elizabeth Hardy
Office of the United States Trustee
75 Ted Turner Drive, S.W.
Suite 362
Atlanta, GA 30303